UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | Chapter 11 |
| JKW ENTERPRISES, LLC and STADIUMS EXPORT, INC., | Bankruptcy No. 23-00797 |
| Debtors. | Jointly Administered |

## AMENDED OPINION AND ORDER ON MOTION TO DISMISS

The matter before the Court is the United States Trustee's Motion to Dismiss (Doc.54) (hereinafter "Motion to Dismiss") under U.S.C. §1112. Creditor Solon State Bank joined the Motion to Dismiss. The Court held an evidentiary hearing and then, after several delays, held a supplemental evidentiary hearing on May 20, 2024.[1] Joseph Peiffer appeared on behalf of the Debtors. Claire Davidson appeared on behalf of the United States Trustee. Douglas Flugum appeared as the Subchapter V Trustee. Siobhan Briley and Benjamin Neilson appeared on behalf of Creditor Solon State Bank. The Court took the matter under advisement after briefs were due. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### I. FINDINGS OF FACT

---

[1] There were multiple continuances stemming from the Court's request for additional evidence and Debtors' principal's health concerns.

1

JKW Enterprises, LLC ("JKW") and Stadiums Export, Inc. ("Stadiums") filed their Chapter 11 subchapter V voluntary petitions on October 6, 2023. JKW and Stadiums (together "Debtors") jointly filed Motion for joint administration on October 19, 2023. This Court granted the Motion for joint administration on November 7, 2023. While the cases are jointly administered, they remain separate.

Charles Johnston is the managing member of JKW. Johnston founded JKW in 2014 and owns 100% of JKW. JKW's business was commercial leasing of a warehouse property and a retail store property. JKW owns the two parcels of commercial real property. One property is at 2055 North Town Lane, Linn County, previously leased as a warehouse ("Warehouse"). The other property is at 4529 1st Ave. SE, Linn County, previously leased as a Dollar Tree store ("Dollar Tree"). Both parcels are pledged to Solon State Bank as collateral for multiple loans.

On August 10, 2020, a destructive wind storm, known as a derecho, seriously damaged the Warehouse. The Warehouse was twisted and moved by the hurricane-force winds in a clockwise direction. The building was left out of alignment and sustained structural damage. The fire systems and natural gas pipes were all displaced. The Dollar Tree property was damaged as well. Johnston testified that some business records were also damaged. Tenants in both spaces left due to the derecho damage.

Johnston hired a company he identified as Structures, LLC to straighten the Warehouse. He filed insurance claims to the insurer State Farm Fire & Casualty Co. ("State Farm"). The claims were for the derecho damage and subsequent vandalism of and theft from the properties. State Farm paid JKW more than $874,000 and $259,000 under the respective insurance policies. JKW sued State Farm for breach of contract after disputing the payout amounts, but the cases were dismissed without prejudice.

Solon State Bank has not received monthly loan payments since the derecho and closed JKW's bank account in January 2023. JKW has had difficulty opening a new bank account and has no account today. In March of 2023, Solon State bank filed a foreclosure action petition in state court on JKW's properties. On June 14, 2023, the state court granted Solon State Bank's motion to appoint them as receiver for JKW's real properties. JKW filed its Chapter 11 voluntary petition on October 6, 2023, automatically staying the foreclosure and receivership.

A major factual dispute has arisen about the extent of the work that has been done on the Warehouse to address the derecho damage. Johnston asserts that Structures, LLC did substantial work to straighten the Warehouse. Johnston asserted Structures installed "X" bracing and did other remedial work. However, Johnston has provided no detailed invoices from Structures and no credible detail of the work done, the time put in, or the materials used. Johnston received more than $1.1 million

from State Farm in payouts on the property damage and Solon State Bank has sought an accounting for the use of the that money. Johnston explained that he used the money to redeem a farm for a third entity, Parrs Enterprises, Inc., also owned by Johnston that has filed a separate bankruptcy proceeding before this Court: Parrs Enterprises, Inc., No. 24-26 (Bankr. N.D. Iowa Jan. 11, 2024). He asserted that he conveyed a partial interest in that farm to Structures as payment for its work. He claimed that he also set-off some of the value of the work against amounts Structures owed him previously.

Solon State Bank is not satisfied with this explanation and believes Johnston has acted fraudulently or in bad faith with the funds. It believes that the work done by Structures—or Johnson himself—was insufficient and that the amount allegedly credited to Structures by Johnston is unreasonable. The Bank has offered the Raker Rhodes Engineering's Structural Review Report (hereinafter "Report") dated August 3, 2023, to support these arguments. See Creditor's Ex. C-7. After the initial evidentiary hearing, the Bank and its representatives visited the Warehouse with Johnston to see the "X" bracing and other work. The parties then argued to the Court about the Motion to Dismiss based in part on what they learned at the visit.

The Court ordered a second evidentiary hearing to formally receive that evidence. After several lengthy delays, the Court held that hearing on May 20, 2024. At the supplementary evidentiary hearing, Solon State Bank offered testimony from

Nick Ford—a contractor with Woodruff Construction, the firm that commissioned the Report from Raker Rhodes Engineering—who used the report to explain his own evaluation of the Warehouse after the site visit. Ford agreed that some work had been done on the building, corroborated by the Report. See, e.g., Creditor's Ex. C-7, Photo 4. Ford testified, however, that, the work was incomplete and that the $319,000 Structures LLC invoiced for the work it did was excessive. Ford also testified that an additional $2 million of work would be needed to repair the Warehouse into a leasable condition.

Johnston is also the president of Stadiums. He co-founded Stadiums in 2011 and became 100% owner in December 2013. Stadiums' business was leasing residential apartments. Stadiums owns two parcels of residential real property. One property is at 801 Melrose Avenue, Johnson County, currently with tenants. The other property, at 454 Lexington Avenue, Johnson County, is currently used as Johnston's home. Both of these parcels were also pledged to Solon State Bank as collateral for multiple loans. Solon State Bank also closed Stadiums' bank account in January 2023. In March of 2023, Solon State Bank filed foreclosure action petition on Stadiums' properties. Solon State Bank subsequently filed a motion for default judgment on October 4, 2023, which encompasses both tracts of real property. Stadiums filed their Chapter 11 petitions on October 6, 2023, automatically staying the state court proceeding.

JKW has had no business operations since the derecho in August of 2020. Stadiums has continued operations with its sole source of income from rental income for the units in the 801 Melrose Avenue building.

Both Debtors encountered some difficulties after filing bankruptcy. Debtors were not able to open a debtor in possession bank account. Debtors also spent significant time trying to get insurance for the real properties they own. Eventually Stadiums obtained insurance and JKW obtained liability insurance. Neither of the Debtors have filed a plan. Debtors have instead filed motions to extend the exclusivity period to file a plan. The UST has objected, arguing that Chapter 11 Subchapter V bankruptcy cases are intended to move quickly, Debtors have made no progress toward proposing a feasible plan, and the Debtors have no present ability to fund any plan. The UST has argued that the cases should be dismissed.

Debtors have "proposed" a "Plan Outline" (Debtor Ex. E). The Plan Outline is wholly reliant on the sale of the Parrs farm. The proposed sale property is not part of Debtors' current estate. The Court agrees with the UST and finds that the Debtors of this case do not have the present ability to fund any plan. See In re Clark, 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001) (explaining that "the property that can be sold free and clear under section 363(f) is defined by subsections (b) and (c) of section 363 as 'property of the estate.'").

## II. CONCLUSIONS OF LAW AND DISCUSSION

The UST argues that cause exists for dismissal under Code § 1112(b). Specifically, the UST argues that Debtors lack good faith in in their bankruptcy filing and that Debtors prospects of reorganization are speculative at best. Solon State Bank joined the motion and the arguments of the UST.

### A. Dismissal Under 11 U.S.C § 1112(b)(1): Bad Faith Filing

Bankruptcy Code § 1112(b)(1) states that: "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . ." "Many courts, including the Eighth Circuit, have recognized that bad faith is 'cause' for dismissal or conversion under the statute." In re Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C., 651 B.R. 1, 5 (Bankr. S.D. Iowa 2023). "Once lack of good faith is raised as an issue of cause for dismissal, the debtor bears the burden of proving that the filing was made in good faith." Stage I Land Co. v. United States Hous. & Urban Dev. Dep't, 71 B.R. 225, 229 (D. Minn. 1986).

"There is no single test for determining when a debtor has filed in bad faith. Rather, courts consider the totality of the circumstances, including . . . the court's evaluation of the debtor's financial condition, motives, and the local financial realities." Obstetric & Gynecologic Assocs., 651 B.R. at 6. The various factors

developed to guide a court's analysis are helpful, but not exhaustive. Id. The following factors help to determine the question of bad faith:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow;
> (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
> (8) the debtor has no employees.

In re AMC Realty Corp., 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001).

While the UST concedes that Factors 1 and 3 do not apply because Debtors each have more than one asset, the UST has shown that the other factors are present and show bad faith. Factors 6-8 are shown by the undisputed evidence. Debtors are unable to meet current expenses and have a negative cash flow. See UST Ex. 1, at 10-12 (JKW's Schedule D indicating secured creditors include primarily the Linn County Treasurer for past due property taxes); UST Ex. 1, at 14-15 (JKW's Schedule E/F indicating that all the unsecured creditors were business related expenses like utilities and insurance); UST Ex. 6, at 10-12 (Stadium's Schedule D indicating multiple secured creditors with liens for property taxes); UST Ex. 6, at 14 (Stadium's

8

Schedule E/F indicating that all the unsecured creditors are business related expenses like utilities and maintenance); UST Ex. 37 (JKW's December 2023 Monthly Operating Report: negative $807.00 net cash flow); UST Ex. 38 (Stadium's December 2023 Monthly Operating Report: negative $906.12 net cash flow). Johnston's own testimony at the supplemental evidentiary hearing corroborates the evidence. JKW is currently losing $30,000 a month. It is undisputed that Debtors have no employees. This evidence satisfies Factors 6, 7, and 8.

Factors 2, 4, and 5 are satisfied by other evidence. Factor 4 is particularly significant. It dictates that when a bankruptcy proceeding is a dispute between two parties that can be resolved in a pending state foreclosure action, the dispute becomes evidence towards a finding of bad faith filing. "[T]he characterization of a case as a two-party dispute is given greater weight relative to other factors." In re Traxcell Techs., LLC, 657 B.R. 453, 461 (Bankr. W.D. Tex. 2024). A two-party dispute is shown when "a debtor faces no threat from any other purported creditors." Obstetric & Gynecologic Assocs., 651 B.R. at 11. This is a two-party dispute between Debtors and Solon State Bank. Standing alone, this can be dispositive because "the existence of a two-party dispute can be independent grounds for dismissing a case." Id.

Factor 5 is satisfied when the bankruptcy filing is intended to frustrate or delay the legitimate efforts of creditors to enforce their rights. Solon State Bank has pending foreclosure actions in state court brought against both JKW and Stadiums.

9

A Motion for Default Judgment was filed against Stadiums on October 4, 2024, and only two days later, Debtors filed these bankruptcies. While this close timing is not dispositive evidence of bad faith on its own, it weighs in favor of a finding of bad faith paired with the rest of the facts of this case. See also In re Cedar Shore Resort, Inc., 235 F.3d 375, 380 (8th Cir. 2000)(affirming dismissal for bad faith after finding that debtor "did not file bankruptcy to effectuate a valid reorganization, but rather to prevent [creditor] from pursuing their claims in state court"). In fact, Obstetric & Gynecologic Assocs. noted that when Factor 4 and 5 are satisfied, "dismissal for cause is warranted." Obstetric & Gynecologic Assocs., 651 B.R. at 10.

The analysis of Factor 2 is similar. Factor 2 is shown where there is a "lack of a meaningful number of unsecured creditors in relation to the indebtedness owed to one major creditor". In conjunction, the court analyzes this factor always with the two-party dispute factor. Id. at 11. Here there are only a few unsecured creditors with small claim amounts compared to Solon State Bank. JKW's liability to Solon State Bank is $1,919,222.07, totaling *98.4% of JKW's secured debt and 92% of its total debt*. Stadiums' liability to Solon State Bank is $2,174,360.72, or *97.8% of its total liabilities and 98.1% of its secured liabilities*. The Court finds based on all of the above that Debtors are basically involved in a two-party dispute.

Taken altogether, the analysis of all the bad faith factors weighs heavily in favor dismissal. These findings are dispositive. The Court will nevertheless review

10

the UST's other arguments as part of the Court's totality of the circumstances analysis.

### B. Dismissal Under § 1112(b)(4)(A): Speculative Reorganization Prospects

The UST also argues dismissal is appropriate because there is little likelihood of successful reorganization. Bankruptcy Code § 1112 (b)(4)(A) provides that: "(1) substantial or continuing loss to or diminution of the estate and (2) the absence of a reasonable likelihood of rehabilitation" is cause for dismissal. This Court has previously recognized that an analysis under 1112(b)(4)(A) is dispositive if it is satisfied. In re Global Processing, Inc., 655 B.R. 486, 493 (Bankr. N.D. Iowa 2023). Finally, "(i)f movants can establish cause under § 1112(b)(4)(A) . . . a court must convert to Chapter 7 or dismiss." Id.

    *i.  Substantial or Continuing Loss to the Estate*

This Court and the Eight Circuit have "found that cause exists under this section when the evidence shows that the debtor has a negative cash flow and no intention of rehabilitating its business." In re Global Processing, Inc., 655 B.R. at 494. Other Courts have also found that this prong is satisfied if allowing the loss to continue by prolonging the case would effectively destroy any prospects of reorganization. In re Traxcell Techs., LLC, 657 B.R. at 462. This Court has previously held that where a debtor's monthly reports show no income or hope of income, and liabilities continue to grow, a substantial or continuing loss is

11

established. In re Plymouth Oil Co., L.L.C., No. 12-01403, 2014 Bankr. LEXIS 3278, at *6 (Bankr. N.D. Iowa Aug. 1, 2014). The weight of the evidence shows a negative net cash flow for both JKW and Stadiums and continuing loss to the estate. Johnston's own testimony that JKW is losing $30,000 a month definitely shows a "substantial [and] continuing loss" to the estate.

*ii. No Reasonable Likelihood of Rehabilitation*

The UST has argued that there is no reasonable likelihood for rehabilitation and that Debtors' proposals are simply speculative at best. Debtor here hopes to sell some assets from other companies and to pursue litigation against State Farm for addition insurance payments. This Court has previously relied on another case finding that "the debtor's reliance on a favorable outcome from pending litigation to cure its financial ills was 'pure speculation.'" In re Brutsche, 476 B.R. 298, 302 (Bankr. D.N.M. 2012). In adopting this view in Plymouth Oil, this Court also noted:

> In a traditional chapter 11 case whether the debtor has a "reasonable likelihood of rehabilitation," would not turn on the anticipated future outcome of a single lawsuit, because cash flow from another valuable activity would provide the means for paying at least a portion of pre-petition debt from post-confirmation profits.

Plymouth Oil Co., L.L.C., at *8 (Bankr. N.D. Iowa Aug. 1, 2014) (citing In re Original IFPC Shareholders, Inc., 317 B.R. 738, 742–43 (Bankr. N.D. Ill. 2004)).

While it is theoretically possible that a debtor could "rehabilitate" its condition by winning a different lawsuit, the possibility was "simply not concrete enough to

12

establish a 'reasonable likeliness of rehabilitation.'" Id. In most cases, "a reasonable likelihood of rehabilitation cannot rest on potential litigation alone." Id. at *8–9; see also In re FRGR Managing Member, LLC, 419 B.R. 576, 583–84 (Bankr. S.D.N.Y. 2009) (finding that the prospect of a potentially meritorious lawsuit bringing funds into the estate was not enough to find that rehabilitation was possible); In re Corinthian, LLC, 440 B.R. 97, 102–03 (Bankr. E.D. Pa. 2009) (dismissing case with no current business operations and a successful outcome "wholly dependent" on successful litigation); Original IFPC Shareholders, Inc., 317 B.R. at 742–43 (reasonable likelihood of rehabilitation not established where no income, increasing administrative and attorney's fees, and entire plan premised on successful litigation); In re Orienta Co-op. Ass'n, 256 B.R. 508, 511–12 (Bankr. W.D. Okla. 2000) (converting a case to chapter 7 where ability to reorganize "solely dependent" on substantial recovery in litigation).

    Here, Debtors have attempted to rely on the slim possibility of ultimately recovering a money judgment from State Farm in litigation that has already had a default judgment entered against Debtors. See JKW Enterprises, LLC v. State Farm Fire and Casualty Co., Nos. 22-cv-143, 22-cv-144 (N.D. Iowa Nov. 30, 2022). Even though appeals are still pending, the likelihood of success on appeal and then success on the merits is merely speculative. Debtors have offered no testimony or analysis to describe how success was likely. Moreover, Ford credibly testified that the

13

Warehouse would require over $2 million dollars in repairs to make it leasable—i.e., income-generating for our purposes. Even if Debtors could win some possible monetary judgment award, there has been no showing it would be enough to pay off its debts and rehabilitate the businesses.

For the foregoing reasons, the Court finds cause exists under § 1112 (b)(4)(A) that further supports dismissal in this case.

### III.  CONCLUSION AND ORDER

Based the Court's review of the totality of the circumstances here, the UST's Motion to Dismiss is GRANTED and these jointly administered cases are hereby DISMISSED.

**FURTHER IT IS ORDERED THAT** the case shall remain open for thirty days from the date of filing this order.

Ordered:

June 11, 2024

Thad J. Collins
Chief Bankruptcy Judge